NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

BILLY K., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, K.K., K.K., *Appellees.*

No. 1 CA-JV 16-0248
FILED 1-4-2017

Appeal from the Superior Court in Maricopa County
No. JS517867
The Honorable Karen L. O'Connor, Judge

**AFFIRMED**

COUNSEL

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Cathleen E. Fuller
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Andrew W. Gould and Judge Patricia A. Orozco (Retired) joined.

---

**S W A N N**, Judge:

¶1        Billy K. ("Father") appeals the severance of his rights to K.K. and K.K. (individually "older child" and "younger child," collectively "the children"). The juvenile court found clear and convincing evidence that the children had been in care for more than nine and fifteen months and that Father had chronic drug problems that would continue for a long period of time. The juvenile court also found by a preponderance of the evidence that severance was in the children's best interests. Father appeals on evidentiary and due process grounds. We affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Beginning in April 2013 there were reports that the older child and M.L. (a half sibling not party to this appeal) were not properly supervised, not attending school, possibly subject to physical abuse, and malnourished. The younger child was taken into custody in December 2014, shortly after birth, by the Department of Child Safety ("DCS") because the child was exposed to methamphetamine. The older child was living with friends of Father and Marissa K. ("Mother"),[1] and DCS was not able to locate them until February 2015. The older child was then taken into DCS custody.

¶3        The younger child was found dependent as to Father in February 2015 and the older child was found dependent as to Father in July 2015. DCS attempted to provide services to Father, but he did not complete them or meet the goals in the case plan. After a trial, the juvenile court severed Father's rights. He appeals.

---

[1]        Mother's rights were also terminated, but she is not a party to this appeal. Mother and Father are still married but living apart. They have regular contact.

## DISCUSSION

**¶4**       Father argues that he was denied due process during the proceedings and that DCS did not present sufficient evidence to support the three severance grounds or the best interests findings.

**¶5**       The right to custody of one's child is fundamental but not absolute. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). Parents' due process rights in severance actions entitle them to a hearing and proper notice of that hearing. *Matter of Appeal in Maricopa Cty. Juv. Action No. JS-4942*, 142 Ariz. 240, 242 (App. 1984). Father was given a hearing and was properly given notice. He testified twice at the hearing and rebutted the evidence presented by DCS. We perceive no deprivation of due process.

**¶6**       To terminate the parent-child relationship, the juvenile court must find at least one of the statutory factors by clear and convincing evidence. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002); *see also* A.R.S. § 8-533(B). The juvenile court must also find by a preponderance of the evidence that severance is in the children's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005). "We will not disturb the juvenile court's disposition absent an abuse of discretion or unless the court's findings of fact were clearly erroneous, i.e., there is no reasonable evidence to support them." *Matter of Appeal in Maricopa Cty. Juv. Action No. JV-132905*, 186 Ariz. 607, 609 (App. 1996). When the juvenile court finds multiple grounds for severance, we will affirm if one of them is supported by the evidence. *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 376, ¶ 14 (App. 2010).

**¶7**       We need not directly address Father's arguments on the evidence of drug dependence or nine months' time-in-care, because the evidence supports the juvenile court's findings of fifteen months' time-in-care. A.R.S. § 8-533(B)(3), (B)(8)(a), (B)(8)(c). The parent-child relationship may be severed if:

> The child has been in an out-of-home placement for a cumulative total period of fifteen months or longer pursuant to court order . . . , the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement and there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future.

A.R.S. § 8-533(B)(8)(c). Before severing a parent's rights, DCS must undertake reasonable efforts to reunite the parent and child. *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999).

¶8        The facts support the juvenile court's findings. First, when the juvenile court severed Father's rights, the younger child had been in custody pursuant to court order for eighteen months and the older child for sixteen months. Second, Father has not remedied the circumstances that led to the children's removal. Pursuant to the family-reunification plan from April 2015, Father had to (1) maintain sobriety, (2) provide stable housing and proof of employment, and (3) attend all parenting classes and services.

¶9        First, Father has not proven sobriety. To help address his drug abuse and its effects on the children, DCS referred Father to TASC for drug testing and to TERROS for drug treatment, and requested a psychological evaluation to be completed after three months of sobriety. Father closed out of several TASC referrals before he started successfully completing urinary drug testing in August 2015. However, he still has not submitted a hair follicle for testing pursuant to his open TASC referral. Father only started participating in TERROS after the case plan shifted from reunification to severance and adoption. Moreover, Father never completed the psychological evaluation as ordered. Though he has partially complied with the drug testing, Father has not sufficiently demonstrated sobriety.

¶10        Second, Father has not demonstrated stable housing or employment. He resides in an adult sober-living home, which he acknowledges is not appropriate for the children. Though he has self-reported jobs and income, he never provided proof of his employment to DCS, apart from a single pay stub.

¶11        Finally, Father has not successfully completed the services provided by the department or proven he can successfully parent the children. DCS provided Father with supervised parenting visits. The goals for the visits were to (1) demonstrate age-appropriate parenting skills and nurturing — including coming prepared to visits with nutritious foods, diapers, formula, and clothes; (2) learn "how substance abuse affects parenting"; (3) demonstrate his ability to care for the older child's special needs; (4) demonstrate an understanding of how domestic violence affects children; and (5) "demonstrate an understanding of appropriate child supervision."

¶12        Though Father did improve his preparation and came to a later session with proper food and supplies for the children, he did not consistently attend sessions.  Father did not submit any proof of sobriety to the parent-aid service provider and did not complete any of his homework assignments related to substance abuse.  Father did not demonstrate an understanding of how to provide appropriate foods to cope with the older child's special needs.  Father refused to discuss domestic violence with the parent aid, insisting that there were no domestic-violence issues between Mother and Father.  Finally, Father was not able to show that his living situation was conducive to appropriate child supervision.  He lived with people "for a major[ity] of [the] services" who had substance-abuse problems and could not identify anyone who could help provide a safe environment for the children.  The provider's final report notes that Father did improve but has not shown that he can consistently or reliably provide the supervision the children require.

¶13        Father argues that the trial court did not give enough weight to the facts that he had a "turn around" in August 2015, that he has made good faith efforts, and that his rights should not be terminated based on his failure to overcome all of the circumstances that led to the children's removal.  *See Matter of Appeal in Maricopa Cty. Juv. Action No. JS-501568*, 177 Ariz. 571, 576 (App. 1994).  We disagree.  The parent-aid provider issued its final report in March 2016 and most of the parent-aid services were rendered after Father's "turn around."  Though he did start providing regular urine samples for drug testing, he has not submitted a hair follicle for testing, or completed a psychological evaluation — despite starting one.  The improvement from little or no participation to partial participation is insufficient to show that Father has "remed[ied] the circumstances that cause[d] the child[ren] to be in an out-of-home placement."  A.R.S. § 8-533(B)(8)(c).  Moreover, though he testified that he could "quickly" arrange appropriate living spaces for the children, he has had eighteen months to find a suitable living situation but has failed to do so.  Father is not entitled to an indefinite period of time to remedy the circumstances.  *No. JS-501568*, 177 Ariz. at 577.

¶14        Father finally argues that DCS did not provide sufficient evidence that severance was in the children's best interests.  Separate from the severance ground, the juvenile court must find that the children will affirmatively benefit from the severance or be harmed by a continued relationship with the parent.  *James S. v. Ariz. Dept. of Econ. Sec.*, 193 Ariz. 351, 356, ¶ 18 (App. 1998); *Matter of Appeal in Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 6 (1990).  In determining best interests, the juvenile court can consider whether the current placement is meeting the children's

needs and whether there is an adoptive placement available. *Audra T. v. Ariz. Dept. of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5 (App. 1998).

¶15 The children are currently living together in the least restrictive placement available, which is potentially adoptive. The older child has bonded to her current placement and feels like a part of a family and even asked the case manager's permission to refer to the placement parents as "mom" and "dad." The case manager testified that Father has not proven sobriety, employment, or housing, and that there are concerns that if Father regained custody, the children would return to the state they were in before DCS took them into custody.

¶16 Father argues that there is a relationship between him and the children "that is worth saving." Father relies on cases dealing with incarcerated fathers trying to maintain or establish a relationship with their children. *See Michael J. v. Ariz. Dept. of Econ. Sec.*, 196 Ariz. 246, 247, 250–51, ¶¶ 3–5, 21, 23–24 (2000) (upholding a severance when the father was incarcerated and did not try to connect with his son or protect his legal rights upon learning of the dependency petition); *Michael M. v. Ariz. Dept. of Econ. Sec.*, 202 Ariz. 198, 198, 200–01, ¶¶ 1–2, 10, 13 (App. 2002) (reversing the juvenile court's order denying an incarcerated father's request to visit with his child when there was no evidence of harm to the child from a potential visit). Father is not incarcerated, and these cases are factually distinguishable. While there is evidence of a bond between Father and the children, particularly the older child, Father still has not demonstrated he is capable of parenting the children. The juvenile court properly balanced the children's interests with Father's parental interest. *See Matter of Appeal in Pima Cty. Juv. Severance Action No. S-114487*, 179 Ariz. 86, 101 (1994) ("The law recognizes that judges cannot craft perfect justice for all sides in these disputes. Judges must simultaneously protect the parent's interests and safeguard the child's stability and security."). The trial court did not abuse its discretion.

**CONCLUSION**

¶17 For the foregoing reasons, we affirm.

