42 P.3d 1163

**Michael M., Appellant,**

v.

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY and Corianna M., Appellees.**

**No. 2 CA–JV 2001–0076.**

Court of Appeals of Arizona, Division Two, Department A.

March 19, 2002.

Karen M. Hayden, Tucson, for Appellant.

Janet Napolitano, Arizona Attorney General, By Michelle R. Nimmo, Tucson, for Appellee Arizona Department of Economic Security.

*OPINION*

FLÓREZ, J.

¶ 1 Michael M., father of Corianna M., born April 5, 2001, appeals from the juvenile court's order of September 20, 2001, denying his request for visitation with Corianna at the Pima County Jail where he was then incarcerated. We agree with Michael that the juvenile court abused its discretion and therefore reverse.

¶ 2 The essential facts are undisputed. Corianna was adjudicated dependent in June 2001, after her mother admitted and Michael did not contest the allegations of a dependency petition. The petition alleged that Corianna's mother had abused drugs during her pregnancy and had tested positive for methamphetamines and marijuana at Corianna's birth, that she and Michael had both recently been charged with credit card fraud, and that Michael was currently in jail on those charges.

¶ 3 Michael appeared at a preliminary protective hearing on April 17, at which the court appointed counsel and ordered Michael to establish paternity. He did so by executing an affidavit of paternity on the day of the settlement conference at which Corianna was adjudicated dependent. At that hearing, Michael's counsel requested that Michael be granted visitation with Corianna, stating: "He has never seen this child and we have requested—he has requested repeatedly that someone bring the child to the jail so he could at least see her, and that has been refused." The court responded that visitation rested in the discretion of the Arizona Department of Economic Security (ADES) as the child's custodian. The court further stated that, if ADES denied visitation, Michael could request a hearing on the issue.

¶4 Michael then filed a written motion for visitation, alleging that he had never seen his infant daughter and that ADES had responded to his request for a visit with Corianna at the Pima County Jail with this written statement: "[B]ecause of possible risks to the child, CPS [Child Protective Services] does not allow visits at correctional institutions." Michael claimed ADES's "refusal to permit [him] to even see his new daughter [wa]s unreasonable."

¶5 The following month Michael was present at the dependency disposition hearing. Also present were Corianna's maternal grandparents, whose home in Prescott had recently been approved as a possible placement for Corianna. When ADES proposed that the grandparents be permitted to take Corianna to Prescott that day, Michael's counsel objected, saying:

> [I]f the child is transported to Prescott today, it makes it impossible for my client to ever see his child. He's never seen this baby. I have before the court a motion for visitation, as the court suggested, when I raised the issue at the last hearing that I file a written motion, and I did so.

Counsel further reported that Michael's criminal defense attorney was contemporaneously seeking an order in his criminal case to permit Michael to be escorted to the CPS office by the sheriff's department in order to visit with Corianna there. Counsel said the motion was to have been argued that morning but she did not know the outcome, and she again requested that Michael "have an opportunity to at least see his baby" before Corianna was transferred from foster care and taken to Prescott by her grandparents. The court summarily denied the motion for visitation, commenting: "After the criminal charges are dealt with and we see what the situation is then we can think about what to do about that."

¶6 Michael filed a notice of appeal from that ruling, but later withdrew the appeal in order to argue the issue again to the juvenile court at a dependency review hearing in September. His counsel argued:

> He has never been able to see this child. It is our understanding that there has been a change in circumstances[,] . . . that

the baby is now placed in a relative placement. The relatives are willing to transport the child to the jail. Also, it's my understanding the child is here in Tucson, at least temporarily, and we would request at least the opportunity for my client to see his daughter. Perhaps if we ended, since the mother is doing so well and the case is on track and all reports concerning the mom's progress are very positive . . . that we could end this hearing early and perhaps allow my client to see his daughter if the rest of us leave the courtroom.

Counsel for ADES reiterated the department's position that visitation "at the prison" was not in the child's best interest, and the court-appointed special advocate expressed her view that "the jail is [not] a proper place to bring a baby." However, neither objected to Michael's being allowed to see his daughter that day in court. Counsel for ADES stated:

> We do understand that the child is here today and we had intended to allow the father this chance to see the baby today, in secure circumstances. Of course, he would not be able to hold her at present we—we did think that he—since he has not yet seen the child that today might be a good opportunity to do so.

¶7 Despite the concurrence of all parties present in Michael's being allowed to see Corianna in court that day, the court nonetheless denied the request, stating:

> In terms of the visitation issues. This—the court house is not a visitation center. This is not a place where visitation is conducted either in custody or out. It is not appropriate for there to be a visitation or to require the Sheriff's Department to provide supervision for visitation for in-custody parents of an infant in the court house. For that reason, visitation is not going to happen that way. I don't believe it's in the best interest of the minor child for her to go to the jail to visit her father. I realize that he is the biological father of the child but that does not mean that it's in the infant[']s best interest to be taken to the jail. And my focus here is the best interest of the child, not the best interest of the father. And for that reason I'm

going to deny the request that the child be taken to the jail for visitation at this time.

... [A]t this point there's going to be no visitation while the father's in the jail.

¶ 8 A parent's right to "the companionship, care, custody, and management of his or her children" is a fundamental, constitutionally protected right, *Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551, 558 (1972); *see also Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), as is the right of association with one's children. *In re Maricopa County Juvenile Action No. JD–5312,* 178 Ariz. 372, 873 P.2d 710 (App.1994). These fundamental rights do " 'not evaporate simply because' the natural parents 'have not been model parents or have lost temporary custody of their child to the state.' " *In re Maricopa County Juvenile Action No. JS–500274,* 167 Ariz. 1, 4, 804 P.2d 730, 733 (1990), *quoting Santosky,* 455 U.S. at 753, 102 S.Ct. at 1395, 71 L.Ed.2d at 606. Thus, courts have held that incarcerated parents retain the right of reasonable visitation with their children. *Nicholson v. Choctaw County,* 498 F.Supp. 295 (S.D.Ala.1980); *Valentine v. Englehardt,* 474 F.Supp. 294 (D.N.J. 1979); *O'Bryan v. County of Saginaw,* 437 F.Supp. 582 (E.D.Mich.1977); *Mabra v. Schmidt,* 356 F.Supp. 620 (W.D.Wis.1973); *Hoversten v. Superior Court,* 74 Cal.App.4th 636, 88 Cal.Rptr.2d 197 (1999); *In re Smith,* 112 Cal.App.3d 956, 169 Cal.Rptr. 564 (1980). Moreover, " '[i]t is generally presumed to be in a child's best interest to have visitation with his or her noncustodial parent and the fact that a parent is incarcerated will not, by itself, render visitation inappropriate." ' *Thomas v. Thomas,* 277 A.D.2d 935, 715 N.Y.S.2d 818, 819 (2000), *quoting Davis v. Davis,* 232 A.D.2d 773, 648 N.Y.S.2d 742, 743 (1996).

¶ 9 As Division One of this court observed in *Maricopa County No. JD–5312,* "a parent should be denied the right of visitation only under extraordinary circumstances." 178 Ariz. at 375, 873 P.2d at 713. As the court further observed, deprivation of a parent's right to associate with his or her children is particularly crucial after a dependent child has been removed from the family.

Our statutes require ADES to make diligent efforts to preserve the family by providing all rehabilitative services reasonably necessary to rectify the conditions that led to the child's removal. *See* A.R.S. §§ 8–824(G), 8–825(C), 8–843(D)(1), 8–846; *Mary Ellen C. v. Arizona Dep't of Econ. Sec.,* 193 Ariz. 185, 971 P.2d 1046 (App.1999). Facilitating regular contact between parent and child through visitation is perhaps the most basic and essential of these services. "Visitation with the child may be critical to the parent's ability" to show that the child is no longer dependent or could nonetheless "appropriately be returned to the parent's custody and care." *Maricopa County No. JD–5312,* 178 Ariz. at 375, 873 P.2d at 713.

¶ 10 The juvenile court's denial of Michael's repeated requests for visitation with Corianna creates a nearly insoluble dilemma for an unwed father attempting to establish a relationship with his newborn daughter. Arizona courts have held that a father so situated " 'must act persistently to establish the relationship [with his child] however possible and must vigorously assert his legal rights to the extent necessary,' " *Toni W. v. Arizona Dep't of Econ. Sec.,* 196 Ariz. 61, ¶ 19, 993 P.2d 462, ¶ 19 (App.1999), *quoting In re Pima County Juvenile Severance Action No. S–114487,* 179 Ariz. 86, 97, 876 P.2d 1121, 1132 (1994), or risk a judicial finding that he has abandoned the child. Michael's actions bespeak an attempt " 'to promptly and persistently grasp the opportunity to develop a relationship' with [Corianna] and to assert legal parental rights," despite the obvious impediment posed by his incarceration. *Toni W.,* 196 Ariz. 61, ¶ 19, 993 P.2d 462, ¶ 19, *quoting Pima County No. S–114487,* 179 Ariz. at 99, 876 P.2d at 1134. If Michael's every attempt to establish a relationship with Corianna continues to be thwarted until he eventually desists in those attempts, his lack of contact with his daughter might then be cited as evidence of abandonment in a proceeding to terminate his parental rights. *See Michael J. v. Arizona Dep't of Econ. Sec.,* 196 Ariz. 246, 995 P.2d 682 (2000); *Toni W.* Such a result, albeit hypothetical at this juncture, strikes us as not only paradoxical but fundamentally unfair.

¶ 11 The decision to limit visitation rests in the juvenile court's discretion, *Maricopa County No. JD–5312,* but that discretion is not wholly unfettered. A court may properly restrict or terminate a parent's visitation rights only if visitation endangers the child. *Id.* Although we will view the facts in the light most favorable to sustaining the juvenile court's findings and will affirm its order if there is any evidence to support it, *id.,* here there was simply no evidence adduced to support the court's "belief" that it was not in Corianna's best interest to be taken to the jail when her maternal grandparents were reportedly willing to transport her there for that purpose.

¶ 12 As an example in contrast, in *Maricopa County No. JD–5312,* the juvenile court's decision to terminate a mother's visitation with her children hinged on specific testimony that the children suffered adverse emotional and behavioral consequences following supervised visits with their mother. Similarly, decisions in other states denying visitation between incarcerated parents and their minor children typically have had a specific evidentiary basis. *See, e.g., In re Gallego,* 133 Cal.App.3d 75, 183 Cal.Rptr. 715, 720 (1982) (mother charged with murder was properly denied "contact visit" with infant son because jail facilities lacked suitable, secure area for such visitation); *Bowers v. Bowers,* 266 A.D.2d 741, 698 N.Y.S.2d 771 (1999) (father incarcerated for rape of a female infant and had tried to involve his child in resuming contact with the infant); *Rogowski v. Rogowski,* 251 A.D.2d 827, 674 N.Y.S.2d 480 (1998) (visitation not in child's best interests because father was incarcerated for sexual abuse of niece, had received no sexual abuse counseling in prison, and trip to prison entailed six-hour, round-trip bus ride for child).

¶ 13 Although we find scant justification for the juvenile court's refusal to allow Michael even to see his infant daughter for the first time while both were present in the courthouse in September, that particular issue is now moot. With respect to future visitation, however, this record is devoid of any evidence concerning the facilities available for visitation at the jail and of evidence that allowing Michael to visit with Corianna

at the jail would be harmful to the child. In the absence of any such evidence, a blanket order denying visitation cannot be sustained.

¶ 14 Accordingly, the juvenile court's order of September 20, 2001, is reversed.

BRAMMER, Jr., P.J. and PELANDER, J., concurring.