NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO X.K.

No. 1 CA-JV 23-0009
FILED 7-6-2023

---

Appeal from the Superior Court in Maricopa County
No. JD533289
The Honorable Amanda M. Parker, Judge

**AFFIRMED**

---

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer L. Thorson
*Counsel for Appellee Arizona Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Michael S. Catlett joined.

---

**B R O W N**, Judge:

¶1        X.K.'s father ("Father") appeals the juvenile court's order terminating his parental rights.  For the following reasons, we affirm.

## BACKGROUND

¶2        X.K. was born substance-exposed in July 2016.  Her mother ("Mother") admitted to abusing substances while pregnant.[1]  Father did not establish paternity to X.K. and had very little contact with her over the next four years.  Meanwhile, Mother abused methamphetamine and heroin, and most of the time she left X.K. in maternal grandmother's care.

¶3        In June 2020, the maternal grandmother was arrested for aggravated driving under the influence while X.K. was in the car.  Police found numerous drugs in the grandmother's purse, including methamphetamine, fentanyl, and heroin.  The Department of Child Safety ("DCS") took custody of X.K. and placed her with the foster family already caring for her half-brother.  DCS could not locate Father at this time, and it filed a petition asking the juvenile court to adjudicate X.K. dependent, which the court eventually granted.

¶4        Several weeks later, DCS located Father in prison, serving time for drug-related charges.  Father disclosed that before prison, he struggled with drug use but had completed a six-month rehabilitation class in prison.  DCS referred Father for paternity testing, eventually confirming his paternity.  The case manager also consulted a psychologist about starting visitation between Father and X.K.  The psychologist recommended that Father consistently send cards, gifts, and letters to X.K. for one month before beginning telephonic visits and eventually virtual visits.

---

[1]        Mother's parental rights to X.K. were also terminated, but Mother is not a party to this appeal.

¶5        When Father began writing consistently to X.K. several months later, DCS submitted the paperwork to set up telephonic visits in prison.  The request was still pending at the time of Father's release on parole in February 2022.  At that time, DCS referred him for drug testing, the Nurturing Parenting Program, and supervised visits. Father also received drug testing, treatment, and counseling through parole.

¶6        Father participated in services, including an inpatient substance-abuse program.  He entered a sober-living facility afterward but nonetheless tested positive for amphetamines, methamphetamines, and fentanyl.  During this time his attendance at visits was inconsistent, and his visitation referral eventually closed for nonparticipation.

¶7        Three months later, Father's parole officer moved him to a sober living facility in Tucson, and Father emailed DCS requesting telephonic visits.  A few days later, however, Father left the facility without permission, resulting in an arrest warrant; he then failed to maintain contact with DCS or the court.

¶8        Meanwhile, DCS moved to terminate Father's parental rights based on chronic substance abuse and fifteen months in an out-of-home placement.  Father was not present at the initial termination hearing, and the juvenile court found that his absence was without good cause because he had been personally served and warned about the consequences of failing to appear.  After taking evidence, the court terminated his parental rights on each of the alleged grounds.  Father timely appealed, and we have jurisdiction under A.R.S. § 8-235(A).

## DISCUSSION

¶9        A parent's right to the companionship, care, custody, management, and association of his or her children is fundamental and constitutionally protected. *Michael M. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 198, 200, ¶ 8 (App. 2002).  Nevertheless, a parent's right to custody and control of his own child is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11–12 (2000).  Termination of a parental relationship may be warranted when DCS proves a statutory ground under A.R.S. § 8-533 by "clear and convincing evidence." *Id.* at 248–49, ¶ 12.  The court must also find that termination is in the child's best interests by a preponderance of the evidence. *Id.* at 284, ¶ 22.

¶10        "[W]e will accept the juvenile court's findings of fact unless no reasonable evidence supports those findings, and we will affirm a severance order unless it is clearly erroneous." *Jesus M. v. Ariz. Dep't of*

*Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). We do not reweigh the evidence on appeal. *Id.* at 282, ¶ 12. If we conclude that DCS has met its burden of proving any one of the statutory grounds on which the juvenile court ordered termination, "we need not address claims pertaining to the other grounds." *Id.* at 280, ¶ 3.

¶11        The juvenile court may terminate parental rights when (1) the child has been in an out-of-home placement for at least 15 months under a court order, (2) DCS has made a diligent effort to provide the parent with appropriate reunification services, (3) the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement, and (4) a substantial likelihood exists that the parent will not be capable of exercising proper and effective parental care and control in the near future. A.R.S. § 8-533(B)(8)(c).

¶12        Father argues DCS was not diligent in providing him with a paternity test, visitation, or case management services. To satisfy its obligation to make diligent efforts, DCS must provide the parent with the time and opportunity to participate in programs designed to help him become an effective parent. *See In re Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). Nonetheless, it is not required to "provide every conceivable service," to ensure the parent participates in services, provide duplicate services, or undertake futile reunification efforts. *Id.*; *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶¶ 33–34 (App. 1999); *see In re Pima Cnty. Severance Action No. S-2397*, 161 Ariz. 574, 577 (App. 1989).

¶13        The record shows some delay by DCS in completing paternity testing and looking into visitation for Father. The process took eight months. Nonetheless, before paternity testing was completed, DCS consulted with a psychologist about establishing visits. Furthermore, following the psychologist's advice, DCS asked Father to write to X.K. consistently, but he did not follow through for several months or visit her reliably after his release. By the time the evidentiary hearing was held, Father had not contacted X.K. for four months. Overall, and despite any delay in paternity testing, Father had nineteen months to establish a consistent relationship with X.K., and he failed to do so.

¶14        As for case management services, Father asserts DCS made no efforts to locate him after he left his first sober-living facility. But it is unclear what more DCS could have done. The record shows that DCS completed a parent-locate search, made numerous telephone calls to Father, and contacted his community supervisor to no avail. Father argues DCS

could have made additional efforts to communicate with him after it located and served him the termination motion at his residence in November 2022. But DCS called Father that month, and he did not respond. Also, by that time Father had failed to engage with DCS for four months, and the court had changed the case plan to severance and adoption. *See Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 23, ¶ 49 (App. 2019) (DCS is required to make diligent efforts "[while] the case plan is reunification"). On this record, we find no error.

¶15 Father next challenges the court's findings that he could not remedy the circumstances causing X.K.'s out-of-home placement and that there was a substantial likelihood he would not be capable of exercising proper and effective parental care and control in the near future.

¶16 Here, the circumstances preventing Father from safely parenting X.K. at the start of the dependency included his substance abuse, neglect, and incarceration. Regarding substance abuse, Father completed some treatment, but the record shows he continued to abuse drugs. And after he tested positive for amphetamines and methamphetamines, he did not drug test again for DCS before trial—a period of nine months. Additionally, through the community supervision program, Father tested positive for amphetamines and fentanyl five months before trial. After that, he absconded from his sober-living facility, resulting in a warrant for his arrest. Meanwhile, Father visited six-year-old X.K. inconsistently and did not contact her in the four months before trial. Nor had he supported X.K. or established stable housing or employment. These facts support the court's findings.

¶17 Father also challenges the juvenile court's finding that termination was in X.K.'s best interests. Once the court finds a parent unfit under at least one statutory ground for termination, "the interests of the parent and child diverge," and the court proceeds to balance the unfit parent's "interest in the care and custody of his or her child . . . against the independent and often adverse interests of the child in a safe and stable home life." *Kent K. v. Bobby M.*, 210 Ariz. 279, 286, ¶ 35 (2005). "[A] determination of the child's best interest must include a finding as to how the child would benefit from a severance *or* be harmed by the continuation of the relationship." *In re Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). Courts "must consider the totality of the circumstances existing at the time of the severance determination, including the child's adoptability and the parent's rehabilitation." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148, ¶ 1 (2018).

**¶18**　　　　The court may find a child would benefit from termination if there is an adoption plan or if the child is adoptable, *Alma S.*, 245 Ariz. at 150–51, ¶¶ 13–14, or if the child "would benefit psychologically from the stability an adoption would provide," *JS-501904*, 180 Ariz. at 352. Conversely, the court may find the continuation of the parent-child relationship would harm a child and may consider evidence of parental unfitness based on the existence of a termination ground. *See* A.R.S. § 8-533(B); *In re Pima Cnty. Juv. Action No. S-2460*, 162 Ariz. 156, 158 (App. 1989).

**¶19**　　　　The juvenile court found that termination would provide X.K. with permanency and stability because her foster family was meeting her needs and wished to adopt her. These findings are supported by reasonable evidence in the record and satisfy the court's best-interests determination.

**¶20**　　　　Father points to the services he completed and argues the record lacked information about his interactions with X.K. Even assuming Father's visits with X.K. went well, however, it does not undermine his overall inconsistency and failure to participate in visits for several months. Also, because reasonable evidence supports the court's findings, Father's argument is merely an invitation to reweigh the evidence, which we will not do. *See Jesus M.*, 203 Ariz. at 280, ¶ 12.

## CONCLUSION

**¶21**　　　　We affirm the juvenile court's termination order.



AMY M. WOOD • Clerk of the Court
FILED:　　AA