NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO C.G., O.G., and
L.G.

No. 1 CA-JV 23-0039
FILED 8-24-2023

---

Appeal from the Superior Court in Yavapai County
No. P1300SV202200014
The Honorable Anna C. Young, Judge

**AFFIRMED**

---

COUNSEL

Robert D. Rosanelli, Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Prescott Law Group, PLC, Prescott
By Pennie J. Wamboldt
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge Paul J. McMurdie delivered the Court's decision, in which Presiding Judge D. Steven Williams and Judge Samuel A. Thumma joined.

---

**M c M U R D I E**, Judge:

¶1 Genevieve Thibodeau ("Mother") appeals from an order terminating her parental rights. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 Mother and David Goode ("Father") have three children together, Christopher,[1] born in 2014, Orson, born in 2018, and Logan, born in 2019. The parents began dating around 2012 and eventually married. The relationship was on-and-off and tumultuous.

¶3 Mother has long-standing mental-health issues that sometimes cause her to act erratically and aggressively and experience suicidal ideations. Over the years, Mother accrued diagnoses of bipolar, attention-deficit hyperactivity, post-traumatic stress, borderline personality, premenstrual dysphoric disorders, and cannabis dependence. Mother has not consistently taken her medications as prescribed.

¶4 Father noted that Mother's personality and demeanor would change almost daily during the relationship. According to Father, Mother displayed bouts of rage and would have a mental-health episode "about every 3-4 months." Several times, Mother accused Father of abusing her and the children, but police and the Department of Child Safety ("Department") could not substantiate the claims.

¶5 At Orson's birth in 2018, Mother tested positive for marijuana and told a Department investigator that marijuana use affected her parenting ability. The Department offered Mother substance abuse treatment and counseling. Mother scheduled an intake for those services but did not show up. At a follow-up visit from the Department in October 2018, Mother stated that she had relapsed on marijuana, claiming she was trying to stop using the drug by seeking help at a pain management clinic.

---

[1] We use pseudonyms to protect the children's identities.

She also declined services from SENSE, or Substance-Exposed Newborn Safe Environment.

¶6            In March 2019, while Mother was pregnant with Logan, the parents argued, leading Father to be convicted of criminal damage. Father attended domestic-violence classes, moved out of the home, and separated from Mother. The conviction was then set aside.

¶7            Upon Logan's birth, Mother decided to "get serious with [her] mental health and meds and therapy" and placed the children with Father. Mother visited the children about twice a month until June 2021. At a visit around May 2021, Mother began accusing Father of abusing Orson, insisting the children had dairy allergies when they did not, and forcing herself into Father's vehicle, upsetting Christopher. At a June 2021 visit, Mother cornered Christopher in a bathroom and offered him presents if he would come home with her.

¶8            In July 2021, Mother was arrested after she allegedly distributed explicit photos and videos of Father and harassed the children's paternal grandmother. Mother underwent competency proceedings in her criminal case. Mother later pled guilty to domestic violence charges of attempted unlawful distribution of images and harassment and attempted destruction of a public jail. Meanwhile, Father petitioned for divorce, and the court issued temporary orders granting Father sole legal decision-making and suspending Mother's parenting time.

¶9            In May 2022, Father petitioned to terminate Mother's parental rights, as relevant here, under the neglect and mental-illness grounds. *See* A.R.S. § 8-533(B)(2)–(3). After a trial, the juvenile court found that Father had proven both grounds and that termination was in the children's best interests. Mother appealed. This court has jurisdiction under A.R.S. § 8-235(A).

## DISCUSSION

¶10            Mother challenges the order terminating her parental rights under the mental-illness ground. A parent's right to her children's companionship, care, custody, management, and association is a fundamental, constitutionally protected right. *Michael M. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 198, 200, ¶ 8 (App. 2002). These fundamental rights do not evaporate simply because the natural parent is not a model parent. *Id.*

¶11            But while fundamental, a parent's right to custody and control of a child is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196

Ariz. 246, 248–49, ¶ 12 (2000). Severance of a parental relationship may be warranted where a petitioner proves one statutory ground under A.R.S. § 8-533 by "clear and convincing evidence." *Id.* "Clear and convincing" means the grounds for termination are "highly probable or reasonably certain." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284–85, ¶ 25 (2005). The court must also find that severance is in the child's best interest by a preponderance of the evidence. *Id.* at 285, ¶ 29.

**¶12**　　　　This court "will accept the juvenile court's findings of fact unless no reasonable evidence supports those findings" and "will affirm a severance order unless it is clearly erroneous." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). We will not reweigh the evidence but "look only to determine if there is evidence to sustain the court's ruling." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

**¶13**　　　　The juvenile court may terminate a parent's rights to a child if she cannot discharge parental responsibilities because of mental illness, and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period. A.R.S. § 8-533(B)(3).

**¶14**　　　　Mother argues that insufficient evidence supports the determination that her mental illness renders her incapable of discharging her parental responsibilities and that her condition will continue for a prolonged, indeterminate period.

**¶15**　　　　Mother has had significant mental health issues for over a decade. During that time, various services were made available to her, including in-home Department services, SENSE services, Arizona Families First substance-abuse services, and individual counseling; West Yavapai Guidance clinic case management, direct support services, individual and group therapy, psychiatric services, and psychiatric nursing services; Polara Health outpatient mental health services, inpatient treatment, individual therapy, case management, ACE team, psychiatric services, medication reviews; and Yavapai County restoration services.

**¶16**　　　　Despite the availability of services since at least 2010, the record supports the court's findings that Mother failed to stabilize her mental health, which rendered her unable to parent the children. In October 2019, just after Logan's birth, Mother was admitted to the hospital for suicidal ideations and told her provider that she could not care for the children. Mother reported having "considerable mood swings, especially when she is not taking her medications" and that when she feels low, she

"becomes very depressed," stops caring for herself, "pay[s] her children less attention," stops attending her mental-health appointments, and "has frequent thoughts of suicide, usually with a plan." Mother also reported that when manic, she "stops sleeping [and] becomes aggressive with her family members," including screaming, cursing, and assaulting them. Recognizing these issues, to her credit, Mother placed the children in Father's care. Outside the supervised visitation offered by Father, she has not parented them since and has never parented Logan.

¶17 Despite her significant behavioral health needs, for years, Mother stopped taking her medications, changed doses on her own, and took medication with other substances such as Fentanyl, marijuana, and alcohol. Mother also sought out various providers to prescribe her medications at the same time.

¶18 Mother's unstable mental health has led to several hospitalizations, and she has attempted suicide at least a dozen times. Granted, most of these attempts occurred when she was a teenager. Yet even as an adult and a mother, she has had several suicidal episodes, including placing a gun to her head, writing a goodbye letter, driving recklessly near a cliff, and trying to overdose on Fentanyl. Four months before the trial, Mother again attempted suicide by mixing her medication with alcohol and writing another goodbye letter. These facts reasonably support the juvenile court's termination order.

¶19 Mother still argues that once her providers found the right balance of medications in the summer of 2022, she achieved lasting stability. Although there is some evidence that Mother more regularly engaged in mental-health treatment in the five months before the trial, as of June 2022, her provider noted Mother's "[i]nsight is impaired by illness," she has "ongoing struggles with med[ication] management," and had questioned her housing stability. Moreover, in July 2022, Mother again reported experiencing suicidal ideations.

¶20 Mother also continued to struggle with relationships and substance use. Although disputed, the trial evidence supports a finding that, in September 2022, Mother left an inpatient drug treatment center after only three days and against her provider's advice with a male who apparently moved in with her. After that, Mother began missing her appointments, and the provider reported she was "falling into old behaviors and currently actively using [marijuana]." Within a few weeks, Mother reported having a different roommate she described as "highly

dysregulated" and "using substances." Because Mother was not keeping her appointments, the provider closed her referral.

**¶21**     The next month, contrary to her argument that her medications had stabilized her, Mother expressed frustration with her medications not meeting all her needs and asked about taking Ketamine or mushrooms. Reasonable and adequate evidence supports the court's finding that "Mother's inability to safely parent the children due to her mental illness will continue for a prolonged indeterminate period."

**¶22**     Citing the Parent's Bill of Rights, Mother asserts that the juvenile court should have only advanced the children's best interests using the least restrictive means. *See* A.R.S. § 1-601. She thus argues that the case should have been resolved in family court rather than through severance proceedings. Mother, however, did not raise this argument in the juvenile court. *See Englert v. Carondelet Health Network*, 199 Ariz. 21, 26, ¶ 13 (App. 2000) (This court "generally [does] not consider issues, even constitutional issues, raised for the first time on appeal."). And regardless, the Parent's Bill of Rights "does not prohibit a court from issuing an order that is otherwise allowed by law." A.R.S. § 1-602(B).

**¶23**     The juvenile court must determine what is in the child's best interests by a preponderance of the evidence. *Kent K.*, 210 Ariz. at 284, ¶ 22. Once the court finds a parent unfit under at least one statutory ground for termination, "the interests of the parent and child diverge," and the court goes on to balance the unfit parent's "interest in the care and custody of his or her child . . . . against the independent and often adverse interests of the child in a safe and stable home life." *Id.* at 286, ¶ 35. "[A] determination of the child's best interest must include a finding as to how the child would benefit from a severance *or* be harmed by the continuation of the relationship." *Maricopa County Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). "[C]ourts must consider the totality of the circumstances existing at the time of the severance determination" when assessing best interests. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148, ¶ 1 (2018).

**¶24**     Mother contends that severance causes no affirmative benefit to the children. But the juvenile court must find only a detriment *or* a benefit to satisfy the best interests inquiry. *JS-500274*, 167 Ariz. at 5.

**¶25**     The juvenile court found that denying the termination petition would harm the children because they "do not have a normal parent-child relationship with Mother," who has not parented them since October 2019 and has never parented Logan. Furthermore, they will be "at

[a] continued risk of fear, uncertainty, and confusion," as Christopher "has expressed fear that Mother will break his window and kidnap him," and Orson and Logan "do not know Mother." Although not required to, the court also found that the children would benefit from severance because "it will remove all risk of uncertainty and promote a safer, more stable upbringing for" them.

**¶26**        Reasonable evidence supports these findings, and we will not reweigh the juvenile court's assessment of that evidence on appeal. *Jesus M.*, 203 Ariz. 278, 282, ¶ 12 (App. 2002) ("The resolution of such conflicts in the evidence is uniquely the province of the juvenile court as the trier of fact; we do not reweigh the evidence on review.").

## CONCLUSION

**¶27**        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA

7