NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE GUARDIANSHIP OF P.S.

No. 1 CA-JV 23-0055
FILED 8-29-2023

Appeal from the Superior Court in Maricopa County
No. JD32135
The Honorable Michael D. Gordon, Judge

**AFFIRMED**

COUNSEL

Robert D. Rosanelli Attorney at Law, Phoenix
By Robert Rosanelli
*Counsel for Appellant*

Denise L. Carroll, Esq., Scottsdale
By Denise L. Carroll
*Counsel for Appellee Child*

Arizona Attorney General's Office, Phoenix
By Emily M. Stokes
*Counsel for Appellee Department of Child Safety*

## MEMORANDUM DECISION

Judge Anni Hill Foster delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Kent E. Cattani joined.

**F O S T E R**, Judge:

¶1        S.H. ("Mother") appeals a juvenile court order appointing J.T. ("Grandmother") as guardian for minor child P.S. ("Child"), who was born in May 2015. For the following reasons, this Court affirms.

## FACTS AND PROCEDURAL HISTORY

¶2        This case arises from a dependency proceeding regarding Child, which the Department of Child Safety ("DCS") filed on November 21, 2017. DCS began offering Mother parenting classes and other services that month, which continued throughout the dependency. In April 2018, Child was placed in kinship foster care with Grandmother and found dependent as to Mother and Child's father. Mother fully participated in the programs and services DCS offered while maintaining open communications with DCS, regularly attended therapy sessions for herself and Child, and had stable income and housing. Mother's overnight visits with Child went well, and DCS had no concerns with these visits. Based on DCS' recommendation, the court returned Child to Mother's physical custody in October 2019.

¶3        While the dependency regarding Child continued, Mother gave birth to two other children, A.T. and P.H. In January 2020, Mother photographed herself holding a knife to the neck of A.T. and to her abdomen while pregnant with P.H. Mother sent the photographs to A.T. and P.H.'s father as a threat to get him to return her car. Initially DCS reported Child was at daycare when the incident occurred, but Mother later admitted that Child was present in the home when she took the photographs. DCS was also concerned Mother had left her children in the care of Mother's sister, whose parental rights had recently been terminated. Based on these new concerns, Child was placed back in Grandmother's physical custody the following month.

¶4        After this incident, DCS filed a dependency petition regarding A.T., and the court found A.T. to be dependent as to Mother in

May 2020. In October, DCS also filed a dependency petition regarding P.H., whom the court also found dependent as to Mother in January 2021. The juvenile court eventually dismissed these two proceedings in August 2022, leaving both children in Mother's care.

**¶5**         Even though the two other dependencies were dismissed, the dependency regarding Child continued. Mother's visits with Child were inconsistent because of issues with DCS and cancellations by Mother. Mother testified that visits with Child "were always great." But she also stated that, unlike her other children, Child had trauma from remembering events that occurred while living with Mother. In late 2021, Child expressed positive visits with Mother—Child looked forward to the fun she might have during visits and her sadness when visits were cancelled. Child also received therapy during this time.

**¶6**         But by January 2022, Child soured on visits with Mother and expressed fear at being returned to her care. Counseling session notes showed Child was worried about Mother's former boyfriend being released from prison. Child expressed frustration with Mother's behavior of "lying," and she did not feel cared for when she was in Mother's care. Child also displayed happiness when Mother cancelled visits, stated she would rather run away than live with Mother, and called Mother names. Mother's last visit with Child was in September 2022. Grandmother testified that Child returned from that visit upset, reporting that Mother "was yelling at her." Grandmother disclosed that Mother's sister warned Child she would not be permitted "to come over anymore and see [Child's] brother and sister" if Child "[kept] lying on [Mother]." That same month, Child moved to appoint Grandmother as her permanent guardian.

**¶7**         Because of Child's resistance to visiting Mother, four months passed until the next scheduled visit. Grandmother took Child to a neutral, "positive place" with "a lot of play things." Upon arrival, Child was adamant she would not visit Mother. Grandmother and the DCS case manager spent 25 minutes coaxing Child to visit Mother, including offering hair beads, candy, soda, and to shorten the visit while allowing Grandmother to be present. But Child still refused to visit Mother.

**¶8**         After a hearing a week later, on February 16, 2023, the court granted Child's motion for permanent guardianship and dismissed the dependency proceedings. Mother timely filed a notice of appeal on February 23.

¶9          This Court has jurisdiction under A.R.S. §§ 8-235(A) and 12-120.21(A)(1).

**DISCUSSION**

¶10          This Court accepts the juvenile court's findings of fact if supported by reasonable evidence and will not reverse a permanent guardianship order unless it is clearly erroneous. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

¶11          Mother first argues the juvenile court failed to make required findings of fact about whether further reunification efforts would be unproductive. To establish a permanent guardianship, the court must find that DCS "has made reasonable efforts to reunite the parent and child and further efforts would be unproductive." A.R.S. § 8-871(A)(3). If the court orders the appointment of a guardian, the court must "make specific findings of fact in support of" that ruling. Ariz. R.P. Juv. Ct. 346(g)(2)(A).

¶12          Mother waived this argument by failing to first raise the issue in a post-judgment motion. *Francine C. v. Dep't of Child Safety*, 249 Ariz. 289, 296-97, ¶ 17 (App. 2020) ("When a court fails to comply with a *rule* that mandates findings, a party who does not raise the issue in an authorized post-judgment motion may waive it on appeal."). Moreover, her argument is unavailing because the contested guardianship hearing transcript reflects that the juvenile court found "any further reunification efforts would be futile, at this point, and would be unproductive."

¶13          Mother also contends the juvenile court wrongfully delegated to DCS, a therapist, and Child the decision whether Mother should receive visitation. "[T]he trial court has broad discretion" regarding visitation, and this Court will uphold such an order "if there is any evidence to support" it. *Maricopa Cnty. Juv. Action No. JD-5312*, 178 Ariz. 372, 375-76 (App. 1994).

¶14          Mother relies on two California cases for the position that a court cannot delegate its responsibility of determining if visitation is warranted to the affected children. But here, the court did not delegate its responsibility; instead, it considered input from various sources, including Child and her therapist, then made its determination. The court thus complied with its duty to look to the child's best interests and whether visitation would endanger "the child's physical, mental, moral or emotional health." *Id.* at 376; *accord Michael M. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 198, 201, ¶ 11 (App. 2002).

**¶15**         Mother next argues the court failed to find visitation would harm Child. First, Mother has similarly waived her argument that the court failed to find visitation would harm Child by failing to raise the issue in a post-trial motion. *See Francine C.*, 249 Ariz. at 296-97, ¶ 17. Moreover, there was evidence from which the court could conclude that visitation would harm Child. The case manager testified that forcing Child to visit with Mother would be psychologically and emotionally harmful to Child. After years of visitation, Child still experienced trauma from recalling events that occurred while living with Mother, harbored such negative sentiments toward Mother that she was happy when visits were cancelled, and she preferred running away to living with Mother again.

**¶16**         Lastly, Mother contends the court erred in finding DCS provided reasonable reunification efforts. But sufficient evidence similarly supports the court's finding that DCS "made reasonable efforts to reunify" Mother and Child. DCS must "provide a parent with the time and opportunity to participate in programs designed to improve the parent's ability to care for the child," though not "every conceivable service" is required. *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 37 (App. 1999). At the guardianship hearing, Mother testified DCS offered services in November 2017 and subsequent years, including parenting classes, a bonding assessment, coaching, parent aide, psychological evaluations, and supervised visits. She testified she "completed all of [the] services that DCS ever wanted [her] to complete." The DCS case manager corroborated that DCS had offered services throughout those years. But he also testified that forcing Child to continue visits with Mother could emotionally harm Child and undo positive developments made. The only additional service DCS could have offered was family therapy, which the case manager opined was inappropriate under the circumstances. According to the case manager, achieving family reunification would take a "substantial amount of time," even after the years already expended toward reunification. Based on this evidence, the juvenile court did not abuse its discretion by finding DCS made reasonable efforts at reunification. This Court will not disturb that finding.

## CONCLUSION

¶17 For the foregoing reasons, this Court affirms.



AMY M. WOOD • Clerk of the Court
FILED: AA