NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO
N.L., A.L., F.L., M.S., and D.L.

No. 1 CA-JV 25-0048

FILED 12-10-2025

---

Appeal from the Superior Court in Maricopa County
No. JD28652
JS22606
The Honorable Pamela S. Gates, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Ingeet P. Pandya
*Counsel for Appellee Department of Child Safety*

John L. Popilek, PC., Scottsdale
By John L. Popilek
*Counsel for Appellant Tiffany O.*

Maricopa County Legal Advocate's Office, Phoenix
By Amanda L. Adams
*Counsel for Child*

<hr>

## MEMORANDUM DECISION

Presiding Judge David B. Gass delivered the decision of the court, in which Judge Michael J. Brown and Judge Andrew J. Becke joined.

<hr>

**G A S S**, Judge:

¶1        Mother appeals the superior court's order terminating her parental rights to her 5 children. Both fathers are not parties to this appeal. Because reasonable evidence supports the order, the court affirms.

### FACTUAL AND PROCEDURAL HISTORY

¶2        The court views the evidence and draws all reasonable inferences in the light most favorable to sustaining the superior court's decision. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282 ¶ 13 (App. 2002).

¶3        In 2015, the Department of Child Safety filed the first dependency against mother. On the Department's motion, the superior court dismissed that dependency after mother had shown an ability to maintain a safe environment for her children and avoided engaging in domestic violence. Over the next 9 years, the Department received several reports of domestic violence and physical discipline in the home. The record does not show what action the Department took on those reports before this case.

¶4        In 2024—9 years later—this case began. At that point, mother had 5 children, ranging in age from 2 to 11. Two of the middle children told a neighbor about mother physically disciplining them and leaving red, J-shaped marks. The neighbor filed a report with the Department. The Department forensically interviewed the children. Phoenix Children's Hospital's Child Protection Team physically examined the children and confirmed the marks resulted from physical discipline.

¶5        Based on the above, the Department removed all 5 children from mother's care. The Department placed the 2 oldest children in a licensed foster care and placed the 3 youngest children in a Division of Developmental Disabilities-licensed foster home. The Department filed a dependency petition alleging neglect and domestic violence. Following an

adjudication, the superior court found the children dependent and entered a case plan of termination and adoption.

¶6            Though the case began because 2 children had "bruising, welts[,] and cuts" on their bodies, the evidence of neglect and willful abuse grew. The children corroborated mother's mistreatment. Mother hit the children. Mother grabbed at least 1 child by the hair and repeatedly hit that child's head against the wall. Mother physically disciplined the children using cords and other instruments. She would have them lay down with their face in a pillow, sit on top of them, and hit them with various instruments in a punishment the children called drowning. Mother also neglected the children's medical, educational, and basic needs, including access to food. For example, the youngest child was found wearing a urine-soaked diaper while sitting in a urine-soaked playpen. As another example, mother disregarded the oldest child's education. The oldest was 11 when the Department took the children into care, but that child had not attended school since mother removed him from kindergarten. All the children expressed fear of even being in mother's presence because of the long history of abuse and willful neglect.

¶7            To mother's credit, she participated in all services the Department offered her, including random drug testing, drug rehabilitation, a psychological evaluation, and individualized counseling with a domestic violence component. Because of the history of neglect and willful abuse and because of the children's resistance, the Department did not set up visits at first. The Department later moved to have the superior court enter an order suspending all visits, including clinical visits. The superior court granted the motion and suspended all visits. During that same timeframe, the Department moved to terminate mother's rights, alleging neglect and willful abuse.

¶8            Seven months into the case, the superior court held the termination adjudication and granted the Department's motion on neglect and willful abuse grounds. The superior court found mother and one of the fathers each neglected and willfully abused the children, each parent knew "the other parent was abusing and neglecting the children[,] and each parent failed to take action to protect the children from the other parent."

¶9            The court has jurisdiction over mother's timely appeal under Article VI, Section 9, of the Arizona Constitution, and A.R.S. §§ 8-235.A, 12-120.21, and 12-2101.A.1.

**DISCUSSION**

**¶10**　　　　Parental rights are fundamental, but not absolute. *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 97 ¶ 7 (App. 2016). The superior court may terminate a parent's right to the care, custody and management of their children "if it finds clear and convincing evidence of one of the statutory grounds for severance, and also finds by a preponderance of the evidence that severance is in the best interests of the children." *Id.* at 98 ¶ 7. In making its decision, the superior court "must consider the totality of the circumstances when determining whether the Department has made diligent efforts." *In re J.C.*, 259 Ariz. 60, 69 ¶ 39 (App. 2024), *review denied* (Apr. 1, 2025) (cleaned up).

**¶11**　　　　The court conducts a clear-error review of the superior "court's legal conclusion that a statutory ground for termination has been proven by clear and convincing evidence." *Id.* at 68 ¶ 34 (quoting *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 481 ¶ 46 (2023)). Under that approach, the court must affirm the superior court's ruling unless the "court determines as 'a matter of law that no one could reasonably find the evidence to be clear and convincing.'" *Id.* (quoting *Brionna J.*, 255 Ariz. at 481 ¶ 46 (2023)). "Because the superior court is in the best position to evaluate the testimony, this court will not reweigh the evidence." *Id.* (citing *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18 (App. 2009)).

**¶12**　　　　The superior court may terminate parental rights if "the parent has neglected or willfully abused a child." A.R.S. § 8-533.B.2. Neglect means "[t]he inability or unwillingness of a parent, guardian or custodian of a child to provide that child with supervision, food, clothing, shelter or medical care if that inability or unwillingness causes substantial risk of harm to the child's health or welfare." A.R.S. § 8-201.25(a); *E.R. v. Dep't of Child Safety*, 237 Ariz. 56, 59 ¶ 13 (App. 2015). Abuse includes "serious physical or emotional injury or situations in which the parent knew or reasonably should have known that a person was abusing or neglecting a child." A.R.S § 8-533.B.2; *E.R.*, 237 Ariz. at 59 ¶ 11 (App. 2015). Abuse is not limited to serious physical or emotional injury. *See E.R.*, 237 Ariz. at 59 ¶ 12. It also can include inflicting or allowing another to inflict physical injury. *Id.* at 59 ¶ 12–15 (citing A.R.S. § 8-533.B.2); *see also* A.R.S. § 8-201.2(b) (interpreting subsection 8-533.B.2's language of the term "includes" to mean an enlargement, so abuse can be other conduct than serious physical or emotional injury).

## I. The superior court did not clearly err when it suspended mother's parental visits with children.

**¶13** Mother argues the Department did not provide sufficient reunification services because she had no visits with the children during the 7 months the case was pending. The Department argues it need not provide services because it sought to terminate mother's rights based on neglect and willful abuse. The court need not address the Department's argument because the Department provided services and the superior court considered mother's participation. *See Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151 ¶ 18 (2018); *see also In re M.P.*, __ Ariz. __, __ ¶ 29 573 P.3d 564, 573 (App. 2025), *review granted* (Nov. 4, 2025) (holding superior court erred because it did not consider the parent's participation in services when it terminated the parent's rights under the neglect and willful abuse ground). Mother challenges the weight the superior court gave that evidence, but her challenge does not support reversal.

**¶14** The superior court "may properly restrict or terminate a parent's visitation rights . . . if visitation endangers the child." *Michael M. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 198, 201 ¶ 11 (App. 2002). But the superior court should deny a parent "the right of visitation only under extraordinary circumstances." *In re Maricopa Cnty. Juv. Action No. JD-5312*, 178 Ariz. 372, 375 (App. 1994).

**¶15** Three months into the case and based on the Department's motion to suspend visits, the superior court found visits would significantly endanger the children's mental, physical, and emotional health. Beyond the evidence of neglect and willful abuse as discussed in paragraph 6, all the children expressed fear of even being in mother's presence because of the long history of neglect and willful abuse. The superior court then suspended all visits between mother and the children.

**¶16** Based on the nature of mother's neglect and willful abuse, the superior court did not clearly err when it found extraordinary circumstances warranted suspending mother's visits. Even assuming the Department had to provide services, the superior court's decision to deny mother visits comports with Arizona precedent.

## II. The superior court did not clearly err when it terminated mother's rights just as she was about to start more reunification services.

**¶17** Mother argues the Department and the superior court should have given her more time before seeking to terminate her rights because "critical services were on the horizon," implying she was on the path of

improvement. Mother points to the Department psychologist's evaluation to determine what services mother needed and made recommendations to the Department as evidence of her next steps to improvement.

**¶18**         Even if the court assumes the superior court must consider that evidence, just because a parent shows some improvement, the superior court need not find the parent will be effective in the near future. *In re Maricopa Cnty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994) ("[l]eaving the window open indefinitely is not necessary, nor do we think that it is in the child's or the parent's best interests.") (citation omitted). The superior court thus need not leave the reunification window open indefinitely. *Id.*

**¶19**         The superior court is not bound to follow the Department psychologist's recommendations. *See Matter of Pima Cnty. Juv. Action No. 53358-6*, 126 Ariz. 417, 417–18 (App. 1980). And the superior court did not find mother credible when she said she would stop using physical discipline and would meet the children's needs so they would grow and develop. After the superior court weighed the psychologist's report and mother's testimony, it rejected mother's pleas for more time. The superior court found the Department made adequate efforts, but mother continued to lack insight and awareness of the severity of her neglect and willful abuse, which has affected the children.

**¶20**         Mother also makes a cursory argument asking the court to reverse because as a child, mother was the victim of neglect and willful abuse. In 2 paragraphs of the opening brief, mother highlights the psychologist's recommendations about addressing her own childhood trauma. But the psychologist also said mother had to address that trauma to understand how it affects her parenting. Even though mother had not even begun dealing with her own trauma, mother asked the superior court to give her more time. The superior court did not clearly err when it rejected mother's request and terminated her rights despite her difficult childhood.

**¶21**         The court declines mother's invitation to reweigh that evidence. Though mother's efforts are commendable, they are not enough for purposes of this termination action.

**CONCLUSION**

¶22 The court affirms.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR