NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO G.B.

No. 1 CA-JV 24-0032

FILED 07-30-2024

---

Appeal from the Superior Court in Maricopa County
No. JD42440
The Honorable Gregory Como, Judge

**AFFIRMED**

---

COUNSEL

Robert D. Rosanelli, Phoenix
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Ingeet P. Pandya
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Kent E. Cattani and Judge Paul J. McMurdie joined.

---

**C A M P B E L L**, Judge:

¶1        Father appeals the termination of his parental rights to his daughter based on chronic substance abuse and nine months' time-in-care grounds, as well as a finding that termination was in the child's best interests. *See* A.R.S. § 8-533(B)(3), -533(B)(8)(a). For the following reasons, we affirm.

## BACKGROUND

¶2        Jesus Burgos is the biological father (Father) of Gina[1], born July 2009. After Gina's mother was deported to Mexico, Father became Gina's primary custodial parent.[2] In May 2022, Gina started staying with her adult sister (Sister) because Father and Stepmother had relationship issues and were at risk of being evicted from their motel room.

¶3        Gina disclosed to Sister that Father molested her when she was younger. She said one night when she was sleeping alone with Father, he placed his hand underneath her underwear and onto her vagina. She pushed him away, thinking he may have done it unknowingly in his sleep. He stopped touching her once she moved away from him.

¶4        On August 29, Father and Stepmother—now back together—went to pick up Gina from Sister's house. Gina refused to leave with Father, and an argument ensued. Father and Stepmother called Peoria Police Department to "help them" get Gina to cooperate.

¶5        When the police arrived, Sister explained Gina did not want to leave with Father because he had molested her. Reluctantly, Gina

---

[1]        We use a pseudonym to protect the identity of the child.
[2]        Gina's mother was deported in 2012 and is not party to this appeal.

conveyed the allegations to the police.[3] Because the alleged molestation occurred in Phoenix, the Peoria Police Department transferred the case to the Phoenix Police Department for further investigation. In the meantime, Gina was required to go with Father and Stepmother.

¶6        On September 27, Father was interviewed by a detective and denied the sexual-abuse allegations. The same day, the Department of Child Safety (DCS) removed Gina from Father's custody because of concerns that sexual abuse would continue if Gina remained with Father.

¶7        DCS then held a team decision-making meeting with Father and Stepmother to discuss the allegations. Again, Father denied the allegations, stating he believed Gina was lying because she wanted to live with Sister where she could do whatever she pleased.

¶8        Through investigation, DCS learned Father was abusing illegal substances. DCS asked Father to take a rule-out drug test, and he explained he would, but only if the court ordered him to do so.

¶9        DCS filed a dependency petition on September 30, alleging sexual abuse, unstable/unsafe home conditions, and Father's substance abuse. The court issued temporary orders removing Gina from Father's custody and placing her with Sister. Father attended the initial dependency hearing and contested DCS's allegations. At this hearing, the court advised Father of the consequences of his failure to appear at any future hearings.

¶10        Father failed to appear at the contested dependency hearing. Based on his failure to appear, the court found Father waived his right to contest its dependency finding and found Gina dependent.

¶11        At that hearing, DCS moved to suspend all visitation, opining that visitation would endanger the child. DCS based this request on Dr. Erin South's unit consultation recommendation that Father not be allowed to contact Gina. The court granted the motion suspending visitation "until further order of the court," finding it would "endanger the child."

---

[3]     Details of Gina's allegations varied. She told Sister the incident occurred when she was 7 or 8 years old, then later told police it happened when she was 11 or 12. She told Sister it happened when she was alone in a hotel room with Father, then told police it happened in Father's studio apartment. However, her allegations regarding the nature of the alleged actions remained consistent.

¶12          DCS offered Father the following services: a psychosexual evaluation, urinalysis and hair follicle drug testing, and substance-abuse assessment and treatment. Father's participation in services was inconsistent. His hair follicle drug test in January 2023 was positive for amphetamine, methamphetamine, and cocaine. He engaged in random urinalysis testing until late March, and the samples he produced were largely positive for alcohol. Father completed his initial substance-abuse assessment—where he received diagnoses for alcohol, mild amphetamine, and mild cocaine-use disorders—but refused to participate in the offered treatment services.

¶13          In February, Father attended the psychosexual evaluation, yet refused to complete the assessment because he did not want to answer certain questions about "things [that] did not happen." As of August 2023, Father continued to deny both the sexual-abuse allegations and his substance abuse. He was "volatile" and "verbally aggressive" with DCS workers, and he blamed all DCS involvement on others, including Gina.

¶14          DCS moved to terminate Father's parental rights in September 2023, alleging abuse, substance abuse, and 9 months' time-in-care. The contested severance adjudication was held in January 2024. At the adjudication, Father continued to deny all sexual and drug-abuse allegations and did not accept any responsibility for DCS involvement. He disputed the validity of the hair follicle drug test results, claiming he last used methamphetamine and cocaine 20 years ago. He blamed his refusal to participate in urinalysis testing and substance-abuse treatment on his work schedule. When asked if he would "be okay if [his] daughter was adopted by her sister," he replied, "Well, I think if that's what she wants. I mean, if that's what you all think is best for her, although I don't see the reason why."

¶15          The DCS case manager testified about repeated efforts to encourage Father to engage in services and Father's persistent refusal. She testified that severance and adoption by Sister would be in Gina's best interests because Gina had not seen Father in 15 months, she was fearful of and unwilling to reunify with Father, and she felt safest living with Sister. Sister was ready and willing to adopt Gina.

¶16          Based on this evidence, the court terminated Father's parental rights, finding DCS proved the prolonged substance abuse and 9 months' time-in-care grounds by clear and convincing evidence. *See* A.R.S. § 8-533(B)(3), -533(B)(8). The court found DCS failed to prove by clear and convincing evidence the sexual abuse grounds, noting the discrepancies in

Gina's reports to Sister and the police. *See* A.R.S. § 8-533(B)(2). The court held that termination was in Gina's best interests because it would "free her for adoption" and would provide her with "the permanency and stability that she desires." Father timely appealed.

## DISCUSSION

**¶17**        A parent's right to custody and control of his or her child, while fundamental, is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11–12 (2000). The juvenile court may terminate the parental relationship where (1) clear and convincing evidence shows the existence of a statutory ground for termination under A.R.S. § 8-533, and (2) a preponderance of the evidence shows that termination is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 281–82, 288, ¶¶ 7, 41 (2005).

**¶18**        We accept the juvenile court's factual findings so long as they are supported by reasonable evidence and inferences, and we affirm the court's legal conclusions unless they are clearly erroneous. *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 278–79, ¶¶ 30–31 (2023). We do not reweigh the evidence. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

## I.        Nine Months' Time-in-Care

**¶19**        DCS may terminate a parent's rights to his or her child based on the child's time in an out-of-home placement. *See* A.R.S. § 8-533(B)(8). A child in an out-of-home placement for nine months or longer may be permanently removed if the court finds "the parent has substantially neglected or willfully refused to remedy the circumstances" causing the placement. *Id.* DCS must make "a diligent effort to provide appropriate reunification services" to the family. A.R.S. § 8-533(B)(8); *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 19 (App. 2009). Reasonable or diligent efforts have been made if DCS provides the parent "the time and opportunity to participate in programs designed to help [him] to become an effective parent." *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 235, ¶ 14 (App. 2011) (citation omitted). While visitation is an important reunification service, it may be restricted if visitation would endanger the child. *Michael M. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 198, 200-01, ¶¶ 9, 11 (App. 2002). Although a parent should only be denied the right of visitation under extraordinary circumstances, once that right is at issue, the trial court has broad discretion. *Maricopa Cnty. Juv. Action No. JD-5312*, 178 Ariz. 372, 375 (App. 1994) (citing authority). Because the court may terminate parental rights based on the finding of one statutory ground, we only address the

nine months' time-in-care ground. *Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 578, ¶ 5 (App. 2017).

### A. Waiver

**¶20** Father contends the court erred by terminating his parental rights based partly on a finding that DCS made diligent efforts to reunify the family. He argues his non-participation in other services was rendered meaningless because he was denied the "most important reunification service"—visitation with his child. To the extent Father challenges the court order suspending visitation, we do not have jurisdiction to hear this claim.

**¶21** An order terminating visitation is a final, appealable order. *Maricopa Cnty. Juv. Action No. JD-5312*, 178 Ariz. at 374-375; Ariz. R. Juv. Ct. P. 601(b)(2)(E). So too is an order relieving DCS of its duty to provide reunification services. Ariz. R. Juv. Ct. P. 601(b)(2)(D). Visitation is a reunification service. *Francisco F. v. Ariz. Dep't of Econ. Sec.*, 228 Ariz. 379, 381, ¶ 8 (App. 2011).

**¶22** While Father's visitation rights were suspended "until further order of the [c]ourt," the suspension order effectively terminated visitation. *See id.* at 381–82, ¶ 8 ("[B]y no longer requiring ADES to provide reunification services, the court effectively terminated Francisco's right to visitation."). Because Father did not timely challenge the court's visitation suspension order, we lack jurisdiction to consider that order on appeal. *Id.* at 382, ¶ 8.

**¶23** Moreover, if Father is not challenging the suspension order itself but rather the provision of diligent reunification services required for a parental rights termination, he has waived that argument. *See* A.R.S. § 8-533(B)(8)(a). Father challenges DCS's reunification efforts for the first time on appeal. Because the juvenile court is in the best position to evaluate the adequacy of reunification efforts, a parent is precluded from challenging these efforts for the first time on appeal. *Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 178–79, ¶ 16 (App. 2014). If Father believed DCS was not making diligent efforts "at any point, it was incumbent on [him] to promptly bring those concerns to the attention of the juvenile court." *Id.* at 179, ¶ 18.

**¶24** Father failed to challenge DCS's reunification efforts at any point below. *Id.* at 178, ¶¶ 13-14 ("[A] parent dissatisfied with the services actually being provided can raise the issue with the juvenile court . . . [a]t periodic review hearings . . . or request an evidentiary hearing by motion to address the adequacy of services."). "[A] parent who does not object in

the juvenile court is precluded from challenging that [reasonable efforts] finding on appeal." *Id.* at ¶ 16. As such, Father has waived his right to contest DCS's reunification efforts.

### B.    Diligent Efforts

**¶25**         Jurisdiction and waiver aside, we address the merits of Father's arguments in the exercise of our discretion. The record supports the juvenile court's finding that DCS provided diligent reunification efforts in the form of substance-abuse treatment referrals, hair follicle rule-out drug testing, random urinalysis testing, psychosexual evaluation, and the opportunity to have supervised visitation at Gina's discretion. Despite these efforts, Father refused to engage in the services intended to remedy the problems that caused DCS involvement, as set forth above. By March 2023, Father had completely disengaged from all services. The court properly considered Father's lack of meaningful participation in the services offered when deciding to terminate his parental rights. *Christina G.*, 227 Ariz. at 235, ¶ 14.

**¶26**         Given that Father's substance abuse remained unresolved, the court did not err by restricting visitation for the possibility that it would endanger Gina. *Michael M.*, 202 Ariz. at 201, ¶ 11; *Maricopa Cnty. Juv. Action No. JD-5312*, 178 Ariz. at 376. The court properly relied on Dr. Erin South's consultation report, which recommended no contact occur between Gina and Father until the offered services were utilized. The court also properly considered the psychosexual evaluation (albeit incomplete), which read: "The prognosis [Father] will be able to demonstrate the ability to safely parent his child in the foreseeable future is poor at this time." The evaluator highlighted Father's lack of accountability, refusal to engage in psychosexual testing, substance abuse, interpersonal difficulties, and housing instability. "The juvenile court's decision as to the weight and effect of [this] evidence" is not clearly erroneous. *Maricopa Cnty. Juv. Action No. JD-5312*, 178 Ariz. at 375. As such, we affirm the termination order.

## II.    Best Interests

**¶27**         Because Father does not challenge the court's best interests finding, we need not address it. *Crystal E.*, 241 Ariz. at 578, ¶ 6.

**CONCLUSION**

**¶28** For the foregoing reasons, we affirm the termination of Father's parental rights to Gina pursuant to A.R.S. § 8-533(B)(3) and -533(B)(8).



AMY M. WOOD • Clerk of the Court
FILED: AGFV

8